United States District Court
Southern District of Texas
FILED

FEB 0 7 2011

David J. Bradley, Clerk of Court

# UNITED STATES DISTRICT COURT

## SOUTHERN DISTRICT OF TEXAS

### HOUSTON DIVISION

| | | |
|---|---|---|
| Bobie Kenneth Townsend | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | |
| | § | Case No. 4:10-cv-03751 |
| BAC HOME LOANS SERVICING, LP | § | |
| fka COUNTRYWIDE HOME LOANS | § | |
| SERVICING, LP | § | |
| | § | |
| Defendant. | § | |

## Plaintiff's First Amended Complaint

To The Honorable Judge Of Said Court:

I, Bobie Kenneth Townsend, in propria persona, without the benefit of counsel, herein after known as plaintiff, respectfully submit the following:

1. As per the Order of United States District Court Judge Hoyt dated January 31, 2011, plaintiff submits his first amended complaint.
2. As per the Order of United States District Court Judge Hoyt dated January 31, 2011, plaintiff is restricted from claiming negligent hiring, breach of fiduciary duty, theft of property, violation of the Texas Deceptive Trade Practices Act and standing, but plaintiff reserves the right to appeal, if necessary.
3. Through further research plaintiff amends plaintiff's complaint and claims that the defendant acting alone and with others committed Common-Law Fraud, Statutory Fraud, Conspiracy to Commit Fraud, Breach of Contract, Negligent Misrepresentation, and violation of the Truth In Lending Act against plaintiff.

4. That this is an action for a permanent injunction against the defendant with declaratory relief and money damages to redress plaintiff's deprivation of the vested, substantive, procedural rights and right to property secured to the plaintiff under the Constitutions and laws of Texas and of the United States of America.

## A. The Parties

5. That at all times herein mentioned, Bobie Kenneth Townsend was and still is a Natural Born Citizen of Texas, domicile near 1504 Memorial Ln., in Conroe, Texas.

6. That at all times herein mentioned, BAC Home Loans Servicing, LP, fka Countrywide Home Loans Serving LP, herein known as defendant, was and is a Limited Partnership of BANA LP, LLC, and BAC GP, LLC and is located at 7105 Corporate Dr, Plano, TX 75024-4100 Plano, Texas. BAC Home Loans Servicing, LP, FKA Countrywide Home Loans Serving LP and was served with plaintiff's original petition process by serving the defendant's registered agent **CT Corporation System**, at 350 N. Saint Paul St. # 2900, Dallas, TX 75201 – phone number (214) 979-1172.

## B. Background

7. The original case was filed in the 359th District Court of Montgomery County, Texas on October 1, 2010.

8. The case was removed to the United States District Court on October 11, 2010 by the Akerman Law Firm, located at 600 North Pearl Street, Suite S1900, Dallas, Texas 75201.

9. By the pleading of the Akerman Law Firm, the Honorable United States District Court Judge Hoyt determined to take jurisdiction to hear plaintiff's complaint.

10. That at all times mentioned herein, the defendant was acting under the color of title that is, by the simple act of contracting with a single third party debt collection law firm of Barrett Daffin Frappier Turner & Engel, LLP (BDFT&E) and thereby the defendant directed the law firm's employees to assign the defendant the purported original Note and Deed of Trust, which purportedly contained the wet signature of plaintiff. These willful filings of such created documents in the Montgomery County Clerk's Office completed the meeting of the minds of

the defendant and the third party debt collection law firm BDFT&E. The defendant now claims to be the current Lender the purported original Note and Deed of Trust, whereby just a few months before acted in the capacity of a Servicing Agent for some unknown previous Lender.

> UCC 3.405
> Sec. 3.405. Employer's Responsibility for Fraudulent Indorsement by Employee
> (a) In this section:
> (1) "Employee" includes an independent contractor and employee of an independent contractor retained by the employer.
> (2) "Fraudulent indorsement" means:
> (A) in the case of an instrument payable to the employer, a forged indorsement purporting to be that of the employer;  or
> (B) in the case of an instrument with respect to which the employer is the issuer, a forged indorsement purporting to be that of the person identified as payee.

11. There is no evidence before the court that an indorsement has occurred conforming that the defendant is holder of the note.

> UCC 3-203
> (c) Unless otherwise agreed, if an instrument is transferred for value and the transferee does not become a holder because of lack of indorsement by the transferor, the transferee has a specifically enforceable right to the unqualified indorsement of the transferor, **but negotiation of the instrument does not occur until the indorsement is made**.

12. That at all times mentioned herein, the defendant engaged in acts and omissions which constituted deprivation of the rights, privileges, and immunities of plaintiff.

13. That at all times mentioned herein, the defendant had the power and the duty to abide by the original Deed of Trust, but failed in that duty and thereby became a party to the injuries inflicted on the plaintiff.

14. The defendant, through lack of disclosure of its custom, policy and/or color of law, was a proximate cause of plaintiff purchasing a damaged home in Montgomery County.

15. Through the failure to fully disclose that the property would be considered repaired upon sale, the defendant confirmed the market value of plaintiff's property by the Montgomery Central Appraisal District and the assessed value of plaintiff's property by the Appraisal Review Board by paying a disputed amount of tax donations without giving any previous notice or by the

consent of the owner and without evidence that the property was rendered for taxation. (See plaintiff's Memorandum of Law Concerning Texas Property Tax)

16. The defendant then proceeded to act as a tax collector and demanded that the defendant not only pay the disputed tax donation, but it also set up an escrow account for plaintiff to pay into before any such disputed tax was due, without the consent of the owner of the property.

17. Without notice to plaintiff or by his consent, the defendant breached the contract by taking plaintiff's monthly mortgage payment and instead of applying said payment to first, the interest, then next, to the principal, then next, to any escrow account allowed, as agreed in the original deed of trust, the defendant redistributed plaintiff's monthly payments only to the escrow account that plaintiff never authorized.

18. Defendant knew that Hurricane Ike damaged plaintiff's home, but instead of foreclosing during that time, the defendant waited until plaintiff had repaired the Hurricane damage, before the attempt to foreclose.

19. Defendant waited years as a means to steal plaintiff's property before a demand was made making the assumed obligation upon plaintiff impossible to pay.

20. The agreed mortgage payment went from $641.33 to $2,140.84 per month without a signed agreement by plaintiff using Negligent Misrepresentation.

## C. Jurisdiction

21. Plaintiff relies upon the defendant's pleadings for removal of plaintiff's case as the bases of jurisdiction. If the defendant's pleadings of removal are not correct (Docket #1), then plaintiff request that plaintiff's case be remanded back to the 359th District court of Montgomery County, Texas.

## D. Venue

22. Venue is proper in Montgomery County, Texas.  Specifically, venue is mandatory in this county because under the provision of Section 15.011 of Subchapter B of the Civil Practices and Remedies Code actions for recovery of real property or interest in real property shall be brought in the county in which all or a part of the property is located.  The property in question

is located entirely in Montgomery County, Texas. Plaintiff relies upon the defendant's pleadings for removal of plaintiff's case as the bases of venue. If the defendant's pleadings of removal are not correct (Docket #1), then plaintiff request that plaintiff's case be remanded back to the 359th District court of Montgomery County, Texas.

## E. The Facts

23. Bobie Kenneth Townsend has paid all required mortgage payments as specified by the original Note until the defendant threaten to accelerate the maturity of the debt and sell plaintiff's home without his consent. (See Plaintiff's Exhibit AX)

24. Defendant was involved in a trustee foreclosure sale, recorded in Montgomery County Clerk's File number 2010-0031412365, that was scheduled to take place October 5, 2010, of Plaintiff's home located in Montgomery County, Texas. (See Plaintiff's Exhibit W)

25. There are four people domicile within the home that was scheduled for the trustee foreclosure sale on October 5, 2010.

26. Bobie Kenneth Townsend has been domicile within the home that was scheduled for the trustee foreclosure sale on October 5, 2010 for over 5 years.

27. Carolyn Townsend has been domicile within the home that was scheduled for the trustee foreclosure sale on October 5, 2010 for over 5 years and is the spouse of Bobie Kenneth Townsend.

28. Bobie Wayne Townsend II has been domicile within the home that was scheduled for the trustee foreclosure sale on October 5, 2010 for over 5 years and is the youngest son of Bobie Kenneth Townsend.

29. Minnie Frances Stephens has been domicile within the home that was scheduled for the trustee foreclosure sale on October 5, 2010 for over 3 years.

30. Minnie Frances Stephens is the mother of Bobie Kenneth Townsend.

31. Minnie Frances Stephens is seventy-eight years old, receives dialysis three times a week and has a bad heart.

32. Plaintiff claims that the original note indicates that **Countrywide Home Loans, Inc.** to be the original Lender (Payee) concerning plaintiff's property on June 29, 2004.

33. Plaintiff claims that he was and is contesting the property assessment, market value and tax donations associated with plaintiff's property after January 1, 2005.

34. Plaintiff claims that litigation was imminent concerning the contested property assessment, market value and tax donations associated with plaintiff's property on July 9, 2007. (See Plaintiff's Exhibit L)

35. Plaintiff was commencing good faith negotiations concerning the contested property assessment, market value and tax donations associated with plaintiff's property on July 18, 2007, as allowed under the original Deed of Trust. (See Plaintiff's Exhibit M)

36. Plaintiff claims that an agent of the defendant paid the pending contested property tax donations, without prior notice to plaintiff or with the consent of plaintiff on or about March 12, 2008 and breached the deed of trust. (See Plaintiff's Exhibit N)

37. Plaintiff claims that plaintiff responded on or about March 18, 2008 to the agent of the defendant about the unauthorized payment of the pending contested property tax donations, without prior notice to plaintiff and asked for clarifications as to the events that led to this breach of contract, but no such explanation was forthwith. (See Plaintiff's Exhibit O)

38. The Texas Secretary of State certified that **Countrywide Home Loans Servicing, LP** changed its name to **BAC Home Loans Servicing, LP** on April 27, 2009. (See Plaintiff's Exhibit K)

39. The Texas Secretary of State certified that **Mortgage Electronic Registration Systems, Inc**. (MERS) in Texas officially changed its name to **Altec Properties** on September 15, 2009. (See Plaintiff's Exhibit J)

40. The name change of MERS created a technical defect in defendant's Exhibit A by the presumption that the "**execution and delivery of the instrument by a corporation, partnership, or other company that had been dissolved,**" in Texas.

41. It is claimed by the defendant that "**Lone Servicing**" was the Lender (Payee) on April 16, 2010. (See Plaintiff's Exhibit Q)

42. Plaintiff claims that plaintiff sent notice to defendant about the pending litigations concerning the contested property assessment, market value and tax donations associated with plaintiff's property on May 5, 2010. (See Plaintiff's Exhibit R)

43. Plaintiff received a letter from defendant demanding an erroneous amount from plaintiff that had no bases in accounting and indicated a breach of contract concerning the original deed of trust on or about July 1, 2010. (See Plaintiff's Exhibit S)

44. It is claimed by the defendant that **BAC Home Loans Servicing, LP** claims to be the Mortgage Servicer on July 1, 2010. (See Plaintiff's Exhibit S)

45. Plaintiff responded, on or about July 26, 2010, to the defendant's demand for erroneous funds and requested discovery that is allowed under the Truth In Lending Act, which the defendant refused to disclose. (See Plaintiff's Exhibit T)

46. Defendant **BAC Home Loans Servicing, LP, FKA Countrywide Home Loans Serving LP** claims to be the Lender (Payee) on August 24, 2010. (See Plaintiff's Exhibit U)

47. It is claimed by the defendant that **Ms. Kelly Jimenez** with BDFT&E was appointed substitute trustee over the deed of trust on August 24, 2010. (See Plaintiff's Exhibit G)

48. It is claimed by the defendant that **Ms. Kelly Jimenez** with BDFT&E claims to be the substitute trustee concerning the trustee foreclosure sale of plaintiff's property on August 30, 2010. (See Plaintiff's Exhibit W)

49. Plaintiff was sent defendant's intent to foreclose on August 30, 2010. (See Plaintiff's Exhibit V)

50. Plaintiff demanded that defendant postpone the pending auction of plaintiff's home and the matter be negotiated, if not, then plaintiff again asked for TILA discovery on September 20, 2010. (See Plaintiff's exhibit A)

51. It is claimed by the defendant that **Mortgage Electronic Registration Systems, Inc**. (MERS) was the Payee (Lender) on September 24, 2010. (See Defendant's Exhibit A)

52. The purported assignment of the Note and Deed of Trust is in question as if the document claims that MERS held the Note and Deed of Trust, but fails to indicate for whom it was nominee for.

53. The assignment was done without a corporate seal giving a technical defect of defendant's Exhibit A.

        Texas Civil Practices and Remedy Code
        CHAPTER 16. LIMITATIONS
        SUBCHAPTER A. LIMITATIONS OF PERSONAL ACTIONS
        16.033. **Technical Defects in Instrument**

(a) **A person with a right of action for the recovery of real property conveyed by an instrument with one of the following defects** must bring suit not later than four years after the day the instrument was recorded with the county clerk of the county where the real property is located:

(1) lack of the signature of a proper corporate officer, partner, or company officer, manager, or member;

(2) **lack of a corporate seal**;

(3) **failure of the record to show the corporate seal used**;

(4) **failure of the record to show authority of the board of directors or stockholders of a corporation, partners of a partnership, or officers, managers, or members of a company**;

(5) **execution and delivery of the instrument by a corporation, partnership, or other company that had been dissolved**, whose charter had expired, or whose franchise had been canceled, withdrawn, or forfeited;

(6) acknowledgment of the instrument in an individual, rather than a representative or official, capacity;

(7) **execution of the instrument by a trustee without record of the authority of the trustee or proof of the facts recited in the instrument**;

(8) failure of the record or instrument to show an acknowledgment or jurat that complies with applicable law; ...

54. It is claimed by the defendant that **BAC Home Loans Servicing, LP** claims to be the Lender (Payee) on September 28, 2010. (See Plaintiff's Exhibit E)

55. Plaintiff received a response dated September 28, 2010 from the defendant of its intention to continue with the auction of plaintiff's home that that there would be no TILA discovery as the matter was final. (See Plaintiff's Exhibit E)

> Before a lien holder forces sale of a homestead, the homestead's exempt portion must be ascertained and, if possible, the excess segregated from the homestead. The forced sale of an unsegregated homestead is a nullity. Crowder, et al. v. Benchmark Bank, No. 93-01939-CV (Dallas), 10/17/94, 11 pp.; Mallou v. Payne & Vendig, 750 S.W.2d 251 (Tex.App.-Dallas 1988, writ denied).

56. Plaintiff filed suit against the defendant on October 1, 2010 in the 359th District Court of Montgomery County, Texas.

57. Plaintiff received a response dated October 27, 2010 from Bank of America concerning plaintiff's TILA discovery and that the matter was being looked into.

58. On December 20, 2010, plaintiff received a history of accounting concerning plaintiff monthly mortgage payment confirming the breach of contract within the deed of trust. (See Plaintiff's Exhibit AX)

59. Because of past actions of the defendant and it's agents, associates and business partners there is a reasonable expectation that the defendant committed Common-Law Fraud, Statutory Fraud, Conspiracy to Commit Fraud, Breach of Contract, Negligent Misrepresentation and violation of the Truth In Lending Act against plaintiff.

## F. Intermingling of the Parties Attached to the Defendant

60. As stated above **Countrywide Home Loans, Inc.** indicates to be the original Lender concerning the original Promissory Note and Deed of Trust associated with the purchase of plaintiff's home.

61. **Countrywide Financial** used subsidiary agencies from other DBA's like **Countrywide GP, LLC**, **Countrywide Home Loans, Inc.**, **Countrywide Home Loans Servicing, LP** and **Countrywide Tax Services Corporation** for certain applications of its business.

62. In January of 2008, **Bank of America** purchased **Countrywide Financial** along with its subsidiary agencies.

63. Plaintiff's Exhibit K shows that the defendant is actually the same agency that was called **Countrywide Home Loans Servicing, LP** that was directed by the original Lender, by which have direct knowledge of the past actions against plaintiff and whereby the defendant is directly responsible for any harm that was done to plaintiff.

> "Party in interest may become liable for fraud by mere silent acquiescence and partaking of benefits of fraud." Bransom v. Standard Hardware, Inc., 874 S.W.2d 919, 1994

## G. As For A First Cause Of Action

64. Plaintiff repeats and reiterates each and every allegation contained in the paragraphs "1" through "63" inclusive, with the same force and effect as though each were fully set forth at length herein.

65. Plaintiff claims defendant committed Common-Law Fraud against plaintiff.

66. Defendant's agent directed plaintiff to a web site that indicated that plaintiff would pay less than $900.00 in tax donations per year because of the condition of the property that was being purchased. (See Plaintiff's Exhibit EX)

67. Defendant's representation was false, misleading and deceptive and used as a means to have plaintiff obligated to defendant for a piece of property that would become worthless in the hands of the plaintiff. See Custom Leasing v. Texas Bank & Trust Co., 516 S.W.2d 138, 142 (Tex. 1974); State Nat'l Bank v. Farah Mfg. Co., 678 S.W.2d 661, 681 (Tex.App.-El Paso 1984, writ dism'd)

68. Plaintiff relied upon the agent of the defendant as to the matter concerning the property tax donations, as that was the deal breaker concerning the property purchase.

69. Plaintiff explained to defendant's agent that if there was anyway the property tax donations were to increase before the damage was repaired, then plaintiff would rather purchase a piece of property that was not damaged.

70. Defendant's agent assured plaintiff that since the property was determined to be damaged by the appraisal district for the past three years, then plaintiff could be assured that the property tax donations would not increase over $200 - $300 in the near future as long as the damage remained in the property. (See Ernst & Young v. Pacific Mut. Life Ins. Co., 51 S.W.3d 573, 580 (Tex.2001)

71. To get the business from plaintiff, the agent from the defendant made untrue statements, deceptive and misleading statements of fact. See Farah Mfg., 678 S.W.2d at 681; North Am. Life Ins. C. v. Wilburn, 392 S.W.2d 364, 368 (Tex.App.-Dallas 1965, no writ)

72. The agent of the defendant was knowledgeable as to the ability of an appraisal district to remove a variance or not.

73. The agent should have made plaintiff aware that the appraisal district could remove said variance by the simple act of plaintiff purchasing a piece of damaged property.

74. The defendant's agent knew that plaintiff was purchasing damaged property. (See Plaintiff's Exhibit CX)

75. The defendant knew that the property would become worthless to plaintiff, if the variance was removed by the appraisal district, but not to the defendant.

76. By the appraisal district removing the variance that was applied to plaintiff's property the very next year after plaintiff purchased said property, the defendant has benefited by every monthly mortgage payment, knowing full well that the chances of default were high.

77. The defendant knew that plaintiff had put down over $25,000 at closing. The defendant had a $25,000 buffer, before any risk of losing a dime.

78. The defendant waited until the amount of default was high enough to make the most profit.

79. The plaintiff sustained damages as a result of defendant's Common-Law Fraud against plaintiff.

80. That solely by reason of all of the foregoing, plaintiff has suffered damage and injury and irreparable harm that would shock the conscience.

## H. As For A Second Cause Of Action

81. Plaintiff repeats and reiterates each and every allegation contained in the paragraphs "1" through "80" inclusive, with the same force and effect as though each were fully set forth at length herein.

82. Plaintiff claims that defendant committed Statutory Fraud against plaintiff.

> Texas Business and Commerce Code
> Sec. 27.01. FRAUD IN REAL ESTATE AND STOCK TRANSACTIONS.
> (a) Fraud in a transaction involving real estate or stock in a corporation or joint stock company consists of a
> (1) false representation of a past or existing material fact, when the false representation is
>     (A) made to a person for the purpose of inducing that person to enter into a contract; and
>     (B) relied on by that person in entering into that contract; or
> (2) false promise to do an act, when the false promise is
>     (A) material;
>     (B) made with the intention of not fulfilling it;
>     (C) made to a person for the purpose of inducing that person to enter into a contract; and
>     (D) relied on by that person in entering into that contract.
> (b) A person who makes a false representation or false promise commits the fraud described in Subsection (a) of this section and is liable to the person defrauded for actual damages.
> (c) A person who makes a false representation or false promise with actual awareness of the falsity thereof commits the fraud described in Subsection (a) of

this section and is liable to the person defrauded for exemplary damages. Actual awareness may be inferred where objective manifestations indicate that a person acted with actual awareness.

(d) A person who (1) has actual awareness of the falsity of a representation or promise made by another person and (2) fails to disclose the falsity of the representation or promise to the person defrauded, and (3) benefits from the false representation or promise commits the fraud described in Subsection (a) of this section and is liable to the person defrauded for exemplary damages. Actual awareness may be inferred where objective manifestations indicate that a person acted with actual awareness.

83. The plaintiff relied upon the assurance by the agent of the defendant that the property tax donation would only gradually rise as values of homes increased in the neighborhood, but would still retain the variance granted to the previous owner to entice plaintiff in entering the contract. (See Fletcher, 26 S.W.3d at 77 n.9)

84. Plaintiff would not have entered the contract if it was fully disclosed that the variance of the property could vanish by the simple act of changing ownership of the damaged property. (Schlumberger Tech. Corp. v. Swanson, 959 S.W.2d 171, 182 (Tex.1997); National Resort Cmtys., Inc. v. Holleman, 594 S.W.2d 195, 196-97(Tex.App-Austin 1980, writ ref'd n.r.e.)

85. Defendant had the duty of full disclosure at closing; that is, a duty not to conceal matters that might influence a plaintiff's actions as to have second thoughts of plaintiff's decision.

86. Defendant did not disclose that defendant was not providing plaintiff a loan from its own assets. But rather securitized the loan using the documentation created by plaintiff.

87. The defendant falsely convinced plaintiff that in plaintiff's original deed of trust it states: "The beneficiary of this Security Instrument is MERS".

> "By engaging in a pattern of racketeering activity, specifically mail or wire fraud,' the Defendants subject to this Court participated in a criminal enterprise affecting interstate commerce." (Compl. para. 231) Foster, et al. v. MERS, et al., Case No. 3:10-cv-00611 (W.D. Ky. filed Sept. 28, 2010). The class action complaint against MERS, LPS, and other conspirators is 124 pages long.

88. The defendant now states that it is the beneficiary under plaintiff's original deed of trust. (See Plaintiff's Exhibit G)

89. No evidence has been entered confirming that transformation occurred. Without such evidence, others may later claim to be the beneficiary under plaintiff's original deed of trust.

90. Having the chain of title entered into evidence should confirm who the beneficiary under plaintiff's original deed of trust really is.

91. Defendant wantonly, maliciously, and knowingly failed to notice plaintiff of it's intent to obligate plaintiff of debt that plaintiff did not authorize and of the intent of defendant to take on such obligation and pass such obligation upon plaintiff.

92. Failing to notice plaintiff, caused plaintiff harm, caused harm to plaintiff's family and caused an undue burden upon the plaintiff.

93. Failing to notice plaintiff was done wantonly, maliciously, and knowingly as to accelerate the maturity of the debt as a means to steal plaintiff's property.

94. The plaintiff sustained damages as a result of defendant's Statutory Fraud against plaintiff.

95. That solely by reason of all of the foregoing, plaintiff has suffered damage and injury and irreparable harm that would shock the conscience

## I. As For A Third Cause Of Action

96. Plaintiff repeats and reiterates each and every allegation contained in the paragraphs "1" through "95" inclusive, with the same force and effect as though each were fully set forth at length herein.

97. Plaintiff claims defendant committed Conspiracy to Commit Fraud against plaintiff.

98. Plaintiff had a reasonable belief, relying upon the closing agent of the defendant that Plaintiff would obtain and retain the same variance that the previous owners had benefited by.

99. The defendant, the appraisal districts and the contracted law firms are using this conspiracy to remove the problem with Black Toxic Mold from properties by the simple act of just saying that the Black Toxic Mold is not there.

100.   First, the agent of the defendant convinces the plaintiff that if plaintiff will just sign the contract, the defendant will assure the plaintiff that he will obtain and retain the same variance that the previous owners benefited from.

101.   Plaintiff purchases the property only to later find out that the Chief Appraiser lies to the Appraisal Review Board and states that the damage has been repaired, no matter what evidence that plaintiff submits.

102.   Plaintiff finds out that the property he purchased should have been condemned from the records that the appraisal district had in their own records. (See Plaintiff's Exhibit CX)

103.   Plaintiff finds that there is no elected official that oversees the operation of the appraisal districts in Texas.

104.   Plaintiff protested the outrageous property tax donations and refused to pay such tax donations until a court of law decided otherwise. (See Plaintiff's Exhibit L)

105.   Before plaintiff's day in court, the defendant works with the appraisal district and pays the contested property tax donations, without previous notice to plaintiff, which made the court issue moot, leaving plaintiff with the burden and cost of filing suit, instead of being the defendant.

106.   The defendant refused to disclose by who or by what means informed the defendant it should pay the pending property tax donations. (See Plaintiff's Exhibit O)

107.   The defendant conspired with the appraisal district and other law firms as to remove the Black Toxic Mold issue from plaintiff's property.

108.   The defendant realized that only by auction, could plaintiff's property be sold with a release of any liability to defendant by failing to fully disclosure of the damaged property.

109.   Plaintiff does not have that luxury.

110.   Plaintiff is demanded to give full disclosure to any potential buyer.

111.   Plaintiff would have to inform any potential buyer that plaintiff's home has Black Toxic Mold and that the potential buyer would pay property tax donations as though the home was brand new.

112.   Through the conspiracy of the defendant the appraisal district, and the law firms involved, they have made plaintiff's home impossible to sell.

113.   Due to the elimination of the variance that was associated with the previous owners of plaintiff's property, and the defendant paying the contested property tax donations, plaintiff's home is the last home that would sell in Conroe, Texas.

114.   The plaintiff sustained damages as a result of defendant's conspiracy to commit fraud.

115.   That solely by reason of all of the foregoing, plaintiff has suffered damage and injury and irreparable harm that would shock the conscience.

### J. As For A Forth Cause Of Action

116.    Plaintiff repeats and reiterates each and every allegation contained in the paragraphs "1" through "115" inclusive, with the same force and effect as though each were fully set forth at length herein.

117.    Plaintiff, claims Breach of Contract by the defendant.

118.    Plaintiff has the right to protest any property tax donation before paying.

> Original Deed of Trust – Sec. 4
> Borrower shall promptly discharge any lien which has priority over this Security Instrument **unless Borrower**: (a) agrees in writing to the payment of the obligation secured by the lien in a manner acceptable to Lender, but only so long as Borrower is performing such agreement; (b) **contests the lien in good faith by, or defends against enforcement of the lien in, legal proceedings which in Lender's opinion operate to prevent the enforcement of the lien while those proceedings are pending, but only until such proceedings are concluded**; or (c) secures from the holder of the lien an agreement satisfactory to Lender subordinating the lien to this Security Instrument. **If Lender determines that any part of the Property is subject to a lien which can attain priority over this Security Instrument, Lender may give Borrower a notice identifying the lien. Within 10 days of the date on which that notice is given**, Borrower shall satisfy the lien or take one or more of the actions set forth above in this Section 4.

119.    The defendant paid the contested property tax donations on or about March 12, 2008. (See Plaintiff's Exhibit N)

120.    The defendant violated plaintiff's due process by not giving plaintiff notice before the defendant paid the contested property tax donations. (See above Sec. 4 of the Original Deed of Trust)

121.    The defendant breached the contract, by paying the contested property tax donations and without giving prior notice before the act.

122.    The defendant breached the contract by not applying plaintiff's monthly mortgage payment in the correct order.

Original Deed of Trust – Sec. 2

2. Application of Payments or Proceeds. Except as otherwise described in this Section 2, all payments accepted and applied by Lender shall be applied **in the following order of priority: (a) interest due under the Note; (b) principal due under the Note; (c) amounts due under Section 3**. Such payments shall be applied to each Periodic Payment in the order in which it became due. Any remaining amounts shall be applied first to late charges, second to any other amounts due under this Security Instrument, and then to reduce the principal balance of the Note.

123.    The defendant breached the contract by applying plaintiff's monthly mortgage payment to the escrow account that was not authorized by plaintiff on or about October 29, 2009. (See above Sec. 2 of the Original Deed of Trust) (See Plaintiff's Exhibit AX)

124.    The plaintiff sustained damages as a result of defendant's Breach of Contract.

125.    That solely by reason of all of the foregoing, plaintiff has suffered damage and injury and irreparable harm that would shock the conscience.

### K. As For A Fifth Cause Of Action

126.    Plaintiff repeats and reiterates each and every allegation contained in the paragraphs "1" through "125" inclusive, with the same force and effect as though each were fully set forth at length herein.

127.    Plaintiff, claims Negligent Misrepresentation by the defendant.

128.    The defendant misrepresented the status of plaintiff's loan. (see Federal Land Bank Ass'n, v. Sloane, 825 S.W.2d 439, 442 (Tex.1991)

129.    The defendant's closing agent misrepresented its intent to help plaintiff receive a loan for a home that would retain its worth associated with the homes in the neighborhood.

130.    Plaintiff would have never purchased a damaged home if there was a possibility that the variances given to the previous owners would be removed by the simple act of plaintiff purchasing the property.

131.    Plaintiff relied upon the defendants closing agent to be trustworthily and professional and to be honest of the possibility of the appraisal district to remove such variances by the simple act of purchasing said property.

132.    The defendant's agent knew or should have know of the Black Toxic Mold within the structure of the home and knew or should have known that there was a possibility that plaintiff or plaintiff's family would not be able to live in such structure. (See Plaintiff's Exhibit CX)

133.    Plaintiff was confident that if plaintiff would not be able to live in such structure, that the market value would be secured by the variance attached to the damaged property.

134.    The plaintiff sustained damages as a result of defendant's Negligent Misrepresentation.

135.    That solely by reason of all of the foregoing, plaintiff has suffered damage and injury and irreparable harm that would shock the conscience.

## L. As For A Sixth Cause Of Action

136.    Plaintiff repeats and reiterates each and every allegation contained in the paragraphs "1" through "135" inclusive, with the same force and effect as though each were fully set forth at length herein.

137.    Plaintiff, claims defendant violated the Truth in Lending Act (15 U.S.C. §1601 et seq.).

138.    In United States Code, Title 44, Section 1507 states that all judges will take judicial notice of the Federal Register.

139.    The Truth in Lending Act found in Volume 75 of the Federal Register, Pages 58501-58504 specifically state that plaintiff is a consumer and that there is a discovery requirement of the defendant.

140.    Plaintiff requested discovery from defendant on May 5, 2010 (See Plaintiff's Exhibit R) which was ignored by the defendant, which is a violation of the Truth in Lending Act (TILA) and the Fair Debt Collection Practices Act (FDCPA)

141.    Plaintiff requested discovery again from defendant on July 26, 2010 (See Plaintiff's Exhibit T) which was ignored by the defendant, which is a violation of the Truth in Lending Act (TILA) and the Fair Debt Collection Practices Act (FDCPA)

142.   Plaintiff requested discovery from defendant on September 20, 2010 (See Plaintiff's Exhibit A) which was ignored by the defendant, (See plaintiff's Exhibit E) which is a violation of the Truth in Lending Act (TILA) and the Fair Debt Collection Practices Act (FDCPA)

143.   The truth in lending act requires the defendant to disclose in the following manner:

> Clearly and obvious.
> In a meaningful sequence.
> In writing.
> In a form that the consumer may keep.
> Identity of the creditor.
> Amount financed.
> Itemization of amount financed.
> Annual percentage rate, including applicable variable-rate disclosures.
> Finance charge, method determining the charge, balance upon which charge is imposed.
> Total of payments.
> Payment schedule.
> Prepayment/late payment penalties.
> Any membership or participation fees, amount and method of determining.
> Statement of billing rights.
> If applicable to the transaction: (1) Total sales cost, (2) Demand feature, (3) Security interest, (4) Insurance, (5) Required deposit, and (6) Reference to contract.

144.   Under the TILA, all details about the mortgage for the purchase of property must be given to plaintiff at or before the time of closing whether the borrower requests the information or not. This was not done.

145.   The Truth In Lending Disclosure Statement form given to plaintiff at time of closing did not contain the information required under the Truth In Lending Act. (See Plaintiff's Exhibit BX)

146.   Plaintiff's Exhibit BX shows that Plaintiff financed 98,870.00, but plaintiff's Exhibit AX shows that beginning balance was 99,900.00.

147.   The violations of the truth in Lending act authorizes the remedy:

> Rescind the loan within three days from signing mortgage loan papers. If the time has already passed, and the lender has filed a foreclosure action against the borrower, then the borrower has three years from discovery to rescind the loan based upon the lender's violations of the Act.
> Civil remedies for actual damages in all cases.

Attorneys' fees and court costs for successful enforcement and rescission actions.
Statutory damages.
For individual actions, double the correctly calculated finance charge but not less
than $100 or more than $1,000 for individual actions.

148.   The plaintiff sustained damages as a result of defendant's violating the truth in Lending
Act.

149.   That solely by reason of all of the foregoing, plaintiff has suffered damage and injury and
irreparable harm that would shock the conscience.

## M. Judge Demand

150.   Plaintiff respectfully demands his right to trial by judge on all issues. The statement is
made in furtherance of plaintiff's rights under the Texas Constitution Bill of Rights.

## N. Conclusion

151.   What is before the court is a complicated situation that will be made clear if plaintiff is
allowed discovery.

152.   Plaintiff has filed a formal complaint with the Texas Secretary of State against the Notary
Publics which notarized defendant's Exhibit A and Plaintiff's Exhibit G.

153.   If the Texas Secretary of State determines that either notary failed in their duty as a state
officer, then standing of the defendant will become an issue at no fault of the plaintiff.

154.   Before the court is multiple documents indicating the Lender (Payee) to be "Countrywide
Home Loans. Inc.", "Lone Servicing", "MERS", BAC Home Loans Servicing, LP, and "BAC
Home Loans Servicing, LP FKA Countrywide Home Loans Serving, LP" the defendant.

155.   If the defendant cannot produce the original Promissory Note and original Deed of Trust,
then the defendants have committed fraud upon the court, by filing defendant's Exhibit A.

156.   It is plaintiff's right that the original Promissory Note and original Deed of Trust, along
with any certified copies be destroyed, if this Honorable court rules in behalf of the defendant
and allows the defendant to sell plaintiff's home.

Furthermore, the evidence indisputably shows that the defendant sheriff and
substitute trustee **was not possessed of the original deed of trust, or of the
promissory note secured thereby**, or of the refusal of the named trustee to act,

**which instruments clothed the defendant sheriff with the power to act in the premises,** but that such instruments were at the time in the exclusive custody and possession of Mr. Pitts, the attorney and representative of the beneficiary of the deed of trust, and were securely deposited in the safe in his office.

***WEST v. AXTELL et al,*** **322 Mo. 401, 17 S.W.2d 328 (1929)**

157.   The defendants have submitted defendant's Exhibit A indicating that a purported officer of MERS assigned the note and deed of trust to the defendant on August 12, 2010, but waited until September 24, 2010 to officially state that the event had occurred.

158.   The assignment event could not have been done by just the wave of a hand.

159.   Some physical thing occurred on August 12, 2010 whereby the corporate office would have had first hand information that the assignment occurred.

160.   No evidence has been given showing who had the chain of custody of the Note and Deed of Trust on August 12, 2010.

161.   The defendant was bared by the Deed of Trust to pay any part of the contested property tax donations.

162.   The defendant did not apply plaintiff's monthly payment correctly as specified in the deed of trust.

163.   The defendant refused to give full disclosure that was required under the TILA.

164.   The plaintiff was deceived into buying this piece of property by the defendant.

165.   The defendant has made plaintiff's home worthless to plaintiff, but a prize to the defendant.

UCC 3.202
Sec. 3.202. Negotiation Subject to Rescission
(a) Negotiation is effective even if obtained:
(1) from an infant, a corporation exceeding its powers, or a person without capacity;
(2) by fraud, duress, or mistake; or
(3) in breach of duty or as part of an illegal transaction.
(b) **To the extent permitted by other law, negotiation may be rescinded or may be subject to other remedies,** but those remedies may not be asserted against a subsequent holder in due course or a person paying the instrument in good faith and without knowledge of facts that are a basis for rescission or other remedy.

## O. Prayer

Wherefore, the plaintiff, Bobie Kenneth Townsend, looks forward to the judgment against BAC Home Loans Servicing, LP, FKA Countrywide Home Loans Serving LP under one or more cause(s) of action and such judgment will cause such results or like in kind as follows:

    a. A permanent injunction against BAC Home Loans Servicing, LP, FKA Countrywide Home Loans Serving LP from ever demanding anything from plaintiff;

    b. compensatory damages in the amount of $140,000;

    c. punitive and exemplary damages in the amount determined by the trier of the facts, of which this court shall consider to be just and fair;

    d. together with cost and disbursements of this action, and such other and further relief which to this court may seem just and proper.

        Damages for injury to real property are typically calculated and awarded as the lesser amount of the decline in fair market value versus the cost of restoring the property to its state before the trespass, in other words, the injured party is entitled to recover the amount by which the property has been devalued, Hartshorn v. Chaddock 135 NY 116, 31 NE 997 (1892) Slavin v. State 152 NY 145, 46 NE 321 (1897).

        In instances where the conduct complained of is willful, wanton or egregious, the Court is vested with the power to award exemplary damages. Exemplary damages may lie in a situation where it is necessary not only to effectuate punishment but also to deter the offending party from engaging in such conduct in the future. Such an award may also be made to address, as enunciated by the Court of Appeals in Home Insurance Co. v. American Home Products Corp. 75 NY2d 196, 550 NE2d 930, 551 NYS2d 481 (1989) "…gross misbehavior for the good of the public…on the ground of public policy". Indeed, exemplary damages are intended to have a deterrent effect upon conduct which is unconscionable, egregious, deliberate and inequitable, I.H.P. Corp. v. 210 Central Park South Corp. 12 NY2d 329, 189 NE2d 812, 239 NYS2d 547 (1963).

        Since an action to foreclose a mortgage is a suit in equity, Jamaica Savings Bank v. M.S. Investing Co. 274 NY 215, 8 NE2d 493 (1937), all of the rules of equity are fully applicable to the proceeding, including those regarding punitive or exemplary damages, I.H.P. Corp. v. 210 Central Park South Corp. , supra .

Wherefore, plaintiff prays that the Honorable Judge will consider all evidence submitted before this honorable court and allow such evidence to determine that remedy for the plaintiff is justified and due. If in the alternative that this Honorable Court should rule that the defendant is allowed to sell plaintiff's property, plaintiff prays that this Honorable Court will order that the defendant deliver the original Promissory Note and the original Deed of Trust to this Honorable Court, after the auction, so that the documents can be removed from commerce.


Respectfully submitted,

Bobie Kenneth Townsend
1504 Memorial Ln.
Conroe, Texas
936-756-2151 – Home
713-410-4050


Sworn To And Subscribed Before Me, the undersigned authority on this the 5th day of February, 2011, to certify that Bobie Kenneth Townsend came before me and acknowledged the above complaint to be true and correct by witness of my hand and official seal.

[Seal]

JACK D. McCHURCH
Notary Public, State of Texas
My Comm. Expires June 14, 2011

Notary Public, State of T E X A S

## CERTIFICATE OF SERVICE

This is to certify that on February 7, 2011, a true and correct copy of the foregoing instrument was served by Certified Mail to the defendant's attorneys.

C. Charles Townsend
SBN: 24028053, FBN: 1018722
Elizabeth Mazzarella
SBN: 24069320, FBN: 1085533
AKERMAN SENTERFITT, LLP
Plaza of the Americas, Suite S1900
600 North Pearl Street
Dallas, Texas 75201
Telephone: 214.720.4300
Facsimile: 214.981.9339

Bobie Kenneth Townsend
1504 Memorial Ln.
Conroe, Texas
936-756-2151 -- Home
713-410-4050